[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This contract action involves the sale of a house with what turned out to be rotted subflooring in two of its bathrooms. The case has been tried to the court. It features a contract drafted by a real estate agent in somewhat informal language. For the reasons set forth below, judgment must enter for the plaintiffs, but only for nominal damages.
The house in question is a single-family raised ranch home in Cheshire. It contains three bathrooms. A hall bathroom and the master bedroom bathroom are adjacent to each other on the first floor. A half-bath is below the hall bathroom on the ground floor. The house was built in 1968 and was owned from 1978 to 1998 by the defendants, Walter and Nancy Courtmanche. The plaintiffs, Elton Mark Gardner and Linda Pierce-Gardner, purchased the house from the Courtmanches in 1998 for $200,000.
Two contracts signed by the parties are important for purposes of this case. The first is the initial contract for the purchase of the house, signed on July 4, 1998. That contract contains a standard clause allowing the purchasers to arrange for a professional home inspection to determine if the building is structurally sound. If the inspection report reveals problems with the Property, the parties are given an opportunity to "reach a mutually satisfactory agreement."
An inspector employed by the plaintiffs conducted a home inspection on July 10, 1998. The inspector gave the plaintiffs a written report. The report states that the half-bath contains "stains active moisture from the area above." With respect to the two first-floor bathrooms, the report states that, "at both tub shower tile surrounds, repair loose tile joints — active leak at tub, stains repairs evident in ceiling below shower. Repair loose grout at family bath floor; repair floor examine subfloor in front of shower."
The report just described set the stage for the second contract of importance in this case. This second contract is a two-page document entitled "Home Inspection Letter" signed by the plaintiffs on July 12, CT Page 8387 1998 and by the defendants on July 16, 1998. The Home Inspection Letter consists of some relatively brief pre-printed language accompanied by nine enumerated handwritten paragraphs itemizing needed repairs. The evidence establishes that the handwritten paragraphs were composed by Lisa Campo, a real estate agent who accompanied the plaintiffs during their house search. (The defendants were represented by a separate real estate agent.) Campo consulted with the plaintiffs while composing these paragraphs.
The pre-printed portion of the home Inspection Letter states, "This Letter is to inform you that in accordance with the above-referenced Real Estate Contract ("Contract"), we had a home inspection performed at the Property. The Home Inspection Report, a copy of which is attached, indicates that the following items at the Property are in need of repair and/or further inspection by a specific trades person." The enumerated handwritten paragraphs dealing with the bathrooms state as follows:
 8) Main (Family) bathroom, Tile needs to be professionally fixed to stop leaking into half bath in lower level. Repair ceiling in half bath lower level. Loose grout on floor walls.
 9) Master bathroom floor, and also inside shower stalls is not installed properly, possible damage to subflooring. Request further inspection and possible repair to this area.
Above the defendants' signatures on the Home Inspection Letter is the preprinted language "Seller agrees to repair items #" followed by the handwritten notation "8-9." Following that is a preprinted line stating that, "Seller agrees to further inspection on items #" followed by a line that is left entirely blank.
Shortly after the defendants signed the Home Inspection Letter, they hired a plumber to fix the leak in the upstairs shower and a second person, the professional status of whom is unclear, to repair the grout. They did not make any other repairs to the bathrooms in question.
The closing occurred on August 24, 1998. Prior to the closing, the plaintiffs walked through the house, noticing little change in the bathrooms. The matter was then raised at the closing. The defendants said that the repairs had been made. They acknowledged, however, that the grout repairperson had left something of a mess and gave the plaintiffs a check in the amount of $250 to compensate for this fact. The plaintiffs then purchased the house. Shortly after that, they moved in. CT Page 8388
On November 4, 1998, the ceiling of the half-bath fell in. The plaintiffs immediately called a plumber, who determined that the subfloors of both second-floor bathrooms were rotten. The plaintiffs eventually had the subfloors replaced and had new fixtures installed in the process.
The credible evidence of the plaintiffs' own plumbers establishes that the subfloor had been rotten for a considerable period of time. The problem was caused by long-term water leakage. There is no evidence that the subfloor deteriorated significantly between July and November 1998.
The plaintiffs commenced this action by service of process in 2000. Their amended complaint consists of three counts. The First Count alleges breach of contract. The contract assertedly breached is the Home Inspection Letter. The Second Count alleges intentional misrepresentation. The Third Count alleges negligent misrepresentation. The claimed misrepresentations are alleged statements made by the defendants at the closing that "the bathroom floor, and also inside shower stalls is not installed properly, possible damage to subflooring. Request further inspection and possible repair to this area." It is extremely difficult to understand exactly what this paragraph requires These difficulties are compounded by the fact that the defendants agreed to "repair" these items but did not agree to "further inspection" of these items.
The first sentence arguably requires reinstallation of the inside shower stalls. It does not expressly do so. Even if this item was breached, there is no evidence that this breach caused the plaintiffs any damage, since, as already discussed, the subfloor was already rotten. (The plaintiffs eventually purchased new bathroom fixtures, but the contract requires no such purchase; at most, it requires reinstallation of the old shower stall.)
The real question is whether the second sentence requires the defendants to inspect the subfloor. A thorough professional inspection would have discovered that the subfloor was rotted. (The inspection would have had to have been both professional and thorough; the home inspector hired by the plaintiffs conducted an inspection himself and was unable to diagnose the problem with any certainty.) The defendants did not, however, agree to conduct such an inspection. The Home Inspection Letterrequests further inspection, but the defendants, as already described, agreed to "repair" but not to "further inspection." When the contract in question is read as a whole, it is apparent that the "request" was not agreed to. Under these circumstances, there was no breach of the requested "further inspection" requirement.
While certain provisions of the contract were breached, the evidence CT Page 8389 fails to establish any actual damages resulting from those breaches. Under these circumstances, judgment must enter for the plaintiffs on the First Count, but only nominal damages of $1 are awarded.
The Second Count claims intentional misrepresentation. This is a species of fraud, and must be proven, if at all, by clear and satisfactory evidence. No such proof appears here. The statement claimed to be fraudulent is the statement concerning the repairs made by the defendants at the closing. The evidence establishes that the defendants told the plaintiffs that the repairs required by the contract had been made. While this statement was inaccurate, it was not intentionally false. The defendants were, at most, understandably confused by the language of the contract. There is no credible evidence that the defendants acted in bad faith. The defendants went out of their way to hire a plumber to stop the leak at its source, although nothing in the literal language of the contract required them to do so. Under these circumstances, the tort of intentional misrepresentation has not been proven.
The Third Count alleges negligent misrepresentation. As already described, the defendants' statements at the closing were inaccurate. Some of the agreed-upon repairs had not been made. Whether these statements were negligently made is a nice question. Would a reasonably prudent person be able to accurately construe the requirements of this contract? This question need not be answered here. The evidence, as discussed above, does not establish any actual damages caused by the defendants' failure to make the required repairs. Torts of negligence require proof of actual damage. Under these circumstances, the tort of negligent misrepresentation has not been proven.
For the reasons set forth above, judgment shall enter in favor of the plaintiffs on the First Count, Nominal damages of $1 are awarded on that count. Judgment shall enter in favor of the defendants on the Second and Third Counts.
Jon C. Blue Judge of the Superior Court